Kristina E. WHITE, Petitioner–Appellee,

v.

Zakary R. HARPER, Dianne Harper, n/k/a Dianne McMinn, Christine Hill and Dawn Messer n/k/a Dawn Bequeaith, Respondents–Appellants.

No. 10–0939.

Court of Appeals of Iowa.

Oct. 5, 2011.

Patricia Zamora of Zamora, Taylor, Woods, & Frederick, Davenport, for appellant.

Zakary R. Harper, Wewahitchka, Florida, pro se.

Christine Hill, Davenport, pro se.

Dawn Messer, n/k/a Dawn Bequeaith, Davenport, pro se.

Kristina E. White, Evansdale, pro se.

Considered by SACKETT, C.J., and VAITHESWARAN and DOYLE, JJ.

SACKETT, C.J.

Dianne Harper, n/k/a McMinn, named a custodian of her grandson by the Tennessee juvenile court, appeals contending the Iowa court erred in taking subject matter jurisdiction of the custody claim of Kristina E. White, the child's biological mother and in awarding White custody of the child. McMinn contends among other things the Iowa district court should not have (1) denied her motion to dismiss for lack of subject matter jurisdiction, (2) refused to permit her to participate in the hearings, and (3) failed to address the best interests of the child in making the custody decision. We agree with McMinn that a finding of subject matter jurisdiction should not have been made without the

district court conducting the evidentiary hearing ordered earlier by the district court. We also believe the circumstances of this case required that a guardian ad litem be appointed for the child. We vacate the finding that Iowa has jurisdiction, remand to the district court to conduct an evidentiary hearing to revisit the issue of jurisdiction, and to provide McMinn the opportunity to be heard. We do not retain jurisdiction.

**BACKGROUND AND PROCEEDINGS.** From the documents filed here we learn the child in question was born to White in August of 2006, in Waterloo, Iowa. The father of the child, Zakary Harper, is McMinn's son. Approximately three months after the child's birth, White left the child with Harper and McMinn promising to return in a week and take the child back. She did not return for the child. McMinn and Harper petitioned the Tennessee juvenile court to establish custody of the child. A hearing was held on February 2, 2007, which White attended with McMinn and Harper. The Tennessee court gave White four months to prove she had a home, employment, and transportation so she could meet the child's needs and set another hearing for June 1, 2007. White did not appear at this hearing and the Referee of the Juvenile Court of Memphis and Shelby County, Tennessee entered the following findings and recommendations:

Said child is dependent and neglected within the meaning of the law of the State of Tennessee in that said child's mother, Kristina Elizabeth White, on October 30, 2006, gave said child to your petitioner, paternal grandmother, Dianne Harper and left the state of Tennessee to go to Florida. The mother of said child is a resident of the state of Iowa and while traveling to the state of Florida, gave said child to the paternal grandmother and promised to return to the state of Tennessee to retrieve the child within seven (7) days. The father of said child, Zakary Ross Harper, is a resident of the state of Tennessee and resides with the paternal grandmother. The father of said child is also a petitioner in this cause.

IT IS THEREFORE RECOMMENDED:

1. That joint custody of said child be awarded to the father, Zakary Harper and the paternal grandmother, Dianne Harper.

On the same day in the same document the Juvenile Court Judge filed an order stating, "The findings and recommendation of the Referee are hereby confirmed as the decree of this court."[1]

On November 6, 2009, White filed a petition in the Iowa District Court in and for Scott County naming as defendants, Zakary R. Harper, Dianne Harper n/k/a Dianne McMinn, Christine Hill, and Dawn Messer, n/k/a Dawn Bequeaith.[2] White

1. The document bears the following signed certification by a deputy clerk, "I certify that this is a true and correct copy of an order entered in the minutes of the juvenile court of Memphis and Shelby county, Tennessee Steve Stamson, Clerk."

2. Christine Hill and Dawn Messer, n/k/a Dawn Bequeaith, are the child's paternal great aunts. Their sister, Dianne McMinn, asked Hill and Bequeaith to care for the child in April of 2009 when Zakary Harper, who was caring for the child, was arrested in Florida. At that time McMinn was unable to fly from Hawaii to Florida to pick up the child because she was undergoing bilateral shoulder surgery. Hill picked up the child in Florida and took him back to Davenport, Iowa to live, where Hill and Bequeaith provided foster care. Both Harper and McMinn consented to Hill and Bequeaith's temporary custody of the child. In October of 2009, McMinn came to Iowa to pick up the child from Hill and Bequeaith and returned to Ha-

represented that she resided in Black Hawk County, Iowa. She asked that the court find Zakary R. Harper to be the father of the child and asked that he be required to pay child and medical support. She traced the child's alleged residences, contended the child was in Iowa, and asked for a temporary restraining order to prevent his removal from Scott County. She also asked for temporary and permanent custody.

McMinn, Hill, and Bequeaith filed motions to dismiss the petition for lack of subject matter jurisdiction. The district court, Judge Kelley, noted the motion to dismiss concerned a jurisdictional matter which required an evidentiary hearing. Judge Kelley set the matter for hearing to take place on January 7, 2010, and provided that notice be mailed to all parties. Judge Nancy Tabor ordered that McMinn was allowed to appear by phone for the hearing.[3]

The matter came before Judge J. Hobart Darbyshire. McMinn called[4] and spoke with Judge Darbyshire, but this conversation was not recorded. Judge Darbyshire stated on the record he informed McMinn on the telephone McMinn's motion to dismiss would be denied. After the phone conversation with McMinn, Judge Darbyshire considered the motions to dismiss. Hill and Bequeaith appeared pro se. Harper was not present as he was incarcerated in Florida. White was present with counsel. Judge Darbyshire asked only for the parties' arguments, admonishing them not to offer testimony. Both Hill and Bequeaith argued Iowa did not have jurisdiction as the child was not living in Iowa for 180 days. After arguments were made, Judge Darbyshire announced his ruling that Iowa had subject matter jurisdiction over this case and directed White's attorney to prepare a written order to that effect. Judge Darbyshire ordered McMinn return the child to the state at the time of trial, which was to occur on March 17, 2010. The court also ordered a guardian ad litem appointed for Harper as he was incarcerated in Florida. No guardian ad litem was appointed for the child. Additional proceedings followed which resulted in custody of the child being placed with White.

■■ **SCOPE OF REVIEW.** We review de novo the district court's determination of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). *In re Guardianship of Deal–Burch,* 759 N.W.2d 341, 343 (Iowa Ct.App.2008). White has failed to file an appellate brief, which leaves us with several options available. *Bosch v. Garcia,* 286 N.W.2d 26, 27 (Iowa 1979). When the appellee fails to file a brief, we "handle the matter in a manner most consonant with justice and [our] own convenience." *Bowen v. Kaplan,* 237 N.W.2d 799, 801 (Iowa 1976). In this case, we will not search the record for a theory to uphold the decision of the district court, but will "confine [ourselves] to the objections raised by the appellant." *Id.* In addition, we will not go beyond the ruling of the trial court in searching for a theory upon which to affirm its decision. *State ex rel. Buechler v. Vinsand,* 318 N.W.2d 208, 209 (Iowa 1982).

**SUBJECT MATTER JURISDICTION.** McMinn contends the Iowa court did not

waii with him before White filed her petition for custody.

3. Iowa Code section 598B.111 (2009) provides, among other things, for the obtaining of testimony from parties in other states.

4. McMinn and the child apparently were in Hawaii at the time of the call.

have subject matter jurisdiction to decide custody.

Courts may raise the issue of subject matter jurisdiction at any time. *State v. Lasley,* 705 N.W.2d 481, 485 (Iowa 2005). "Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the court's attention." *Klinge v. Bentien,* 725 N.W.2d 13, 15 (Iowa 2006) (internal quotations omitted). The parties cannot confer subject matter jurisdiction on the court. *Id.* "Rather, subject matter jurisdiction is conferred by the constitution or a statute." *Schott v. Schott,* 744 N.W.2d 85, 87 (Iowa 2008). The question is whether Iowa has jurisdiction under the UCCJEA, Iowa Code sections 598B.101 through 598B.317 (2009).

This is not an initial custody determination as defined in Iowa Code section 598B. 102(3)[5]. The Tennessee court made a child custody determination when it issued an order in 2007 awarding joint custody of the child to Harper and McMinn. This is a modification as defined in Iowa Code section 598B.102(11).[6] White seeks to change, replace, or supersede the Tennessee order.

Iowa has jurisdiction to modify the Tennessee order if the factors in Iowa Code section 598B.203 are satisfied. Section 598B.203 provides,

> a court of this state shall not modify a child-custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under section 598B.201, subsection 1, paragraph "a" or "b", and either of the following applies:
>
> 1. The court of the other state determines it no longer has exclusive, continuing jurisdiction under section 598B.202 or that a court of this state would be a more convenient forum under section 598B.207.
>
> 2. A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

Thus, Iowa can modify the Tennessee order if it would have had the jurisdiction to make an initial child custody determination, and either Tennessee determines it no longer has jurisdiction, or the court of Tennessee or Iowa determines no party to the case remains in Tennessee. Based on the record, we are able to conclude no party remains a resident of Tennessee, satisfying subsection two; thus, Iowa would have jurisdiction to make the modification, if it has jurisdiction to make an initial custody determination under section 598B.201 (1)(a) or (b).

Section 598B.201(1)(a) and (b) provide,

> a court of this state has jurisdiction to make an initial child-custody determination only if any of the following applies:
>
> a. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of

5. Iowa Code section 598B.102(3) provides, "Child-custody determination' means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order."

6. Iowa Code section 598B.102(11) provides, "Modification' means a child-custody determination that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination."

the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

b. A court of another state does not have jurisdiction under paragraph "a", or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 598B.207 or 598B.208 and both of the following apply:

(1) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(2) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

The "home state of the child" under subsection (a) above is defined in the act to mean "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." Iowa Code § 598B.102(7). The district court was correct in finding that the child had been in Iowa almost six months. On the date White filed her petition, Iowa was not the home state of the child as the child had not lived in Iowa for at least six consecutive months.[7]

Nor was Iowa the child's home state within six months of the filing of the proceeding. The child may not have resided for more than six consecutive months in any state in the year before the filing of the petition.[8] If the child had no "home state" under subsection (a) at the time the petition was filed by White, Iowa may have jurisdiction under subsection (b). This subsection applies when there is no home state or the home state has declined jurisdiction in favor of Iowa, and both the child and at least one parent have significant connection with Iowa beyond mere physical presence. *Id.* § 598B.201(1)(b). In addition, there needs to be substantial evidence available in this state concerning the child's care, protection, training, and personal relationships.[9] *Id.*

Despite a prior order stating the jurisdictional issue required an evidentiary hearing, Judge Darbyshire refused to accept any evidence, instead directing the

7. The child lived temporarily in Iowa with his paternal aunts based on Harper's written consent and McMinn's agreement from April 24, 2009, until McMinn took him back to Hawaii on October 14, 2009. This is short of the six consecutive month requirement.

8. It does appear the child may have lived in Hawaii for approximately six consecutive months between October 2007 and April 2008 and in Florida for approximately six consecutive months between April 2008 and October 2008, but the precise dates the child was present in those states are unclear in the record currently before us. In any event, both of these time periods were more than a year before the filing of the petition, and thus, do not factor into our jurisdictional analysis under section 598B.201(1)(a).

9. Upon an initial reading of section 598B.201(1)(b), it appears the significant connection and substantial evidence requirements apply only to the second alternative—where the home state of the child has declined jurisdiction, because the drafters of the Iowa UCCJEA did not include a second comma after the second alternative. However, our review of the original uniform law clearly indicates the significant connection and substantial evidence requirements should apply to both alternatives. *See* Uniform Child–Custody Jurisdiction and Enforcement Act § 201(a)(2) (1997) (placing a comma after the no home state alternative and the home state declining jurisdiction alternative). We will interpret Iowa's UCCJEA consistent with the uniform law as we find no indication the Iowa Legislature intended to depart from the uniform law on this point.

pro se parties and White's attorney to offer argument only. In addition, despite being granted the ability to appear telephonically at the hearing, the court spoke with McMinn before the hearing and off the record, and denied her motion before the hearing with the other parties began.[10] At the conclusion of the hearing, Judge Darbyshire stated,

> [N]o other state has more significant contacts than Iowa and so Iowa is an appropriate jurisdiction based on the contacts the child has had with the state and the presence of the plaintiff in the state and the child's presence here for nearly 180 days.

The standard to be applied is not whether "no other state has more significant contacts," but whether Iowa does in fact have a significant connection to the child and at least one parent. In addition, the statute makes clear mere physical presence in the state is not enough.

Based on the lack of evidence offered at the hearing on the motions to dismiss, we conclude that White has failed to show Iowa has jurisdiction over the child-custody proceeding. We remand to the district court to conduct a hearing to determine whether Iowa has a significant connection so as to give it jurisdiction.

■ McMinn also contended the matter should have been handled in juvenile court because the Tennessee court awarded custody based on a finding that the child was "dependent and neglected." We find it unnecessary to address this issue.[11] That said, it appears that a guardian ad litem should have been appointed for the child.

White was found to have neglected the child by the Tennessee court, and his father is in prison. The child had been removed from White's care for almost three years before White's petition was filed. The Tennessee proceeding that led to removal is akin to an Iowa juvenile court proceeding finding the child is in need of assistance. Considering the factors above we believe a guardian ad litem should have been appointed to represent the child's interests. *See Fenton v. Webb*, 705 N.W.2d 323, 326 (Iowa Ct.App.2005) and *In re Marriage of Courtade*, 560 N.W.2d 36, 37 (Iowa Ct.App.1996) (noting the child's best interests are the governing consideration in a custody dispute and in making its decision, the court may appoint a guardian ad litem pursuant to Iowa Code section 598.12).

We vacate the district court's January 11, 2010 Order on Motions to Dismiss, and remand this case back to the district court for the appointment of a guardian ad litem for the child. Once the guardian has sufficient time to collect the necessary information, a new evidentiary hearing should be held on whether or not Iowa has subject matter jurisdiction over White's petition. Because we are remanding the case back to the district court for a new hearing, there is no need to address McMinn's other claims of error on appeal as these issues will likely not reoccur.

**VACATED AND REMANDED.**

---

**10.** It is important that the court provide parents and a person such as McMinn, who has had physical custody of a child, an opportunity to be heard, because under Iowa Code section 598B.106 child-custody determinations of this state only bind a person if the person has been notified in accordance with section 598B.108, or has submitted to the jurisdiction of the court, "and who have been given an opportunity to be heard."

**11.** The UCCJEA addresses child-custody proceedings at section 598B.102(4) and says "The term [child custody proceedings] includes a proceeding for ... neglect, abuse, dependency...."